NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

JOHN M. BURTON,                  :

            Plaintiff,           :        Civil No. 05-2643 (JAP)

                                 :

      v.                         :

                                 :        OPINION

DEVON BROWN, et al.,             :

            Defendants.          :

APPEARANCES:

      JOHN M. BURTON, Plaintiff Pro Se
      Northern State Prison
      P.O. Box 2300
      Newark, New Jersey 07114

PISANO, District Judge

      Plaintiff John M. Burton, a prisoner who is confined at

Northern State Prison, seeks to bring this action in forma

pauperis pursuant to 28 U.S.C. § 1915.  Based upon his affidavit

of poverty, prison account statement, and the absence of three

prior dismissals within 28 U.S.C. § 1915(g), the Court (1) grants

the application to proceed in forma pauperis; (2) directs the

Clerk to file the Complaint; (3) assesses the $250.00 filing fee

against Plaintiff; (4) directs the New Jersey Department of

Corrections ("NJDOC") to deduct an initial partial filing fee

from Plaintiff's prison account and to forward it to the Clerk,

when funds exist; and (5) directs the NJDOC to forward payments

from Plaintiff's prison account to the Clerk each subsequent

month that the amount in the account exceeds $10.00, until the
$250.00 filing fee is paid in full.  See 28 U.S.C. § 1915(a),
(b).  Having thoroughly reviewed the Complaint to identify
cognizable claims, the Court dismisses the Complaint for failure
to state a claim upon which relief may be granted.  See 28 U.S.C.
§§ 1915(e)(2)(B), 1915A(b)(1).

## I. BACKGROUND

Plaintiff alleges civil rights violations arising from his
removal from a halfway house and incarceration at a state
facility by the NJDOC.  He asserts the following facts.  He
alleges that, according to the classification criteria governing
the NJDOC, he qualified for community release as of June 15,
2004.  He asserts that in September 2004 he was transferred to
Talbot Hall Assessment Center, a community based correctional
facility under contract with the NJDOC, from Northern State
Prison.  He alleges that he was placed in the Clinton Halfway
House, acquired employment, and participated in various programs
designed to reintegrate him into the community.

Plaintiff asserts that on February 10, 2005, the NJDOC
suddenly transferred him to the Youth Correctional Facility in
Yardville, New Jersey, where he was held in semi-isolation for
five days.  He states that he was transferred to the Central
Reception and Assignment Facility on February 15, 2005.  He
alleges that he appeared before the Classification Committee on

2

February 24, 2005.  Defendant Hatrak allegedly informed Plaintiff that he had been removed from the halfway house because Plaintiff's wife had obtained a temporary restraining order against him.  Plaintiff asserts that he told officials that they were mistaken.  He alleges that his wife thereafter went to the family court, obtained a copy of the records showing that she had not sought or obtained a restraining order, and provided the record to NJDOC officials.

Plaintiff asserts that he appeared before the Classification Committee again on March 10, 2005.  At this meeting, Defendant Hatrak told Plaintiff that he was removed from the halfway house based on a telephone call from a woman indicating that she was going to obtain a restraining order against Plaintiff.  Plaintiff asserts that he informed officials that this was not accurate.

Plaintiff asserts that he was transferred to Northern State Prison on March 14, 2005.  On March 24, 2005, Plaintiff appeared before the Classification Committee at Northern State Prison.  He alleges that the chair person determined that he was indeed eligible for placement in a halfway house.  However, officials later advised him that placement in a halfway house was not immediately available.

Plaintiff contends that Defendants violated his Fourteenth Amendment right to due process of law and inflicted cruel and unusual punishment contrary to the Eighth Amendment by removing

him from the halfway house without notice and opportunity to be
heard.  Plaintiff seeks declaratory relief, injunctive relief and
damages for violation of his constitutional rights.

## II. LEGAL STANDARD

The in forma pauperis statute, as amended by the Prison
Litigation Reform Act ("PLRA"), Pub. L. No. 104-134, §§ 801-810,
110 Stat. 1321-66 to 1321-77 (April 26, 1996), requires the
Court, prior to docketing or as soon as practicable after
docketing, to review a complaint in a civil action in which a
plaintiff is proceeding in forma pauperis or a prisoner seeks
redress against a governmental employee or entity.  See 28 U.S.C.
§§ 1915(e)(2)(B), 1915A.  The PLRA requires the Court to sua
sponte dismiss any claim if the Court determines that it is
frivolous, malicious, fails to state a claim on which relief may
be granted, or seeks monetary relief from a defendant who is
immune from such relief.  Id.

A pro se complaint is held to less stringent standards than
formal pleadings drafted by lawyers.  See Haines v. Kerner, 404
U.S. 519, 520 (1972).  A claim is frivolous if it "lacks even an
arguable basis in law" or its factual allegations describe
"fantastic or delusional scenarios."  Neitzke v. Williams, 490
U.S. 319, 328 (1989); see also Roman v. Jeffes, 904 F.2d 192, 194
(3d Cir. 1990).  "Given the Federal Rules' simplified standard
for pleading, '[a] court may dismiss a complaint only if it is

4

clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." "
Swierkiewicz v. Soreman, 534 U.S. 506, 514 (2002) (quoting Hishon v. King & Spalding, 467 U.S. 69, 73 (1984)); see also Alston v. Parker, 363 F.3d 229, 233 n.6.

### III.  DISCUSSION

Section 1983 of Title 42 of the United States Code authorizes a person such as Plaintiff to seek redress for a violation of his federal civil rights by a person who was acting under color of state law.  Section 1983 provides in relevant part:

> Every person who, under color of any statute,
> ordinance, regulation, custom, or usage, of
> any State or Territory . . . subjects, or
> causes to be subjected, any citizen of the
> United States or other person within the
> jurisdiction thereof to the deprivation of
> any rights, privileges, or immunities secured
> by the Constitution and laws, shall be liable
> to the party injured in an action at law,
> suit in equity, or other proper proceeding
> for redress.

To recover under 42 U.S.C. § 1983, a plaintiff must show two elements:  (1) a person deprived him or caused him to be deprived of a right secured by the Constitution or laws of the United States, and (2) the deprivation was done under color of state law.  See West v. Atkins, 487 U.S. 42, 48 (1988); Adickes v. S.H. Kress & Co., 398 U.S. 144, 152 (1970).

5

A.   Due Process

The Due Process Clause of the Fourteenth  Amendment of the Constitution of the United States provides:   "nor shall any State deprive any person of life, liberty, or property, without due process of law."   U.S. Const. amend. IV.   A person is entitled to due process of law only when government action deprives him or her of life, liberty, or property.   See Greenholtz v. Inmates of Nebraska Penal and Correctional Complex, 442 U.S. 1, 7 (1979). To analyze Plaintiff's due process claim, the first step is to decide whether he was deprived of a liberty or property interest protected by due process.   See Fuentes v. Shevin, 407 U.S. 67 (1972).   If not, it is not necessary to consider what process is due.   See Morrissey v. Brewer, 408 U.S. 471 (1972).   Thus, Plaintiff was entitled to due process only if he had a protected liberty interest in avoiding removal from the halfway house and placement in a prison.

Liberty interests protected by the Due Process Clause of the Fourteenth Amendment may arise under the Due Process itself or may be created by state statutes or regulations.   See Sandin v. Conner, 515 U.S. 472, 483-484 (1995).   But "the Due Process Clause does not protect every change in the conditions of confinement having a substantial adverse impact on the prisoner." Id. at 478.   "As long as the conditions or degree of confinement to which the prisoner is subjected is within the sentence imposed

upon him and is not otherwise violative of the Constitution, the Due Process Clause does not in itself subject an inmate's treatment by prison authorities to judicial oversight." Montanye v. Haymes, 427 U.S. 236, 242 (1976); see also Vitek v. Jones, 445 U.S. 480, 493 (1980).

It is established that a convicted inmate, such as Plaintiff, has no liberty interest arising by force of the Due Process Clause itself in retaining classification to a halfway house during the term of his sentence. See Meachum v. Fano, 427 U.S. 215, 223-25 (1976) ("given a valid conviction, the criminal defendant has been constitutionally deprived of his liberty to the extent that the State may confine him [and] . . . [t]he Constitution does not . . . guarantee that the convicted prisoner will be placed in any particular prison"); Asquith v. Dep't of Corrections, 186 F.3d 407, 411 (3d Cir. 1999) (New Jersey prisoner confined in halfway house by classification committee has no liberty interest arising by force of the Due Process Clause in avoiding transfer to prison).

Although mandatory language in a state law or regulation can create a protected liberty interest where the alleged deprivation "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life", see Sandin, 515 U.S. 484, New Jersey has not created a liberty interest in retaining halfway house placement. See Asquith, 186 F.3d at 412

("Since an inmate is normally incarcerated in prison,
[plaintiff's] return to prison [from a halfway house in New
Jersey] did not impose atypical and significant hardship on him
in relation to the ordinary incidents of prison life and,
therefore, did not deprive him of a protected liberty interest.")

Because Plaintiff was not deprived of a protected liberty
interest, he had no Fourteenth Amendment right to due process of
law and the Court is constrained to dismiss the due process
claim for failure to state a claim upon which relief may be
granted.[1]

B.   Eighth Amendment

Plaintiff asserts that Defendants inflicted cruel and
unusual punishment by transferring him to maximum security

---

[1] To the extent that Plaintiff contends that he had an
independent liberty interest in Defendants' following prison
regulations, his claim fails as a matter of law because the
Constitution does not require states to follow their own
procedures and law, if there is no underlying liberty or property
interest. See, e.g., Hewitt v. Helms, 459 U.S. 460, 469 (1983)
("we have never held that statutes and regulations governing
daily operation of a prison system conferred any liberty interest
in and of themselves"); Olim v. Wakinekona, 461 U.S. 238, 250-251
(1983) ("Process is not an end in itself.  Its constitutional
purpose is to protect a substantive interest to which the
individual has a legitimate claim of entitlement"); Owensboro
Waterworks Co. v. City of Owensboro, 200 U.S. 38, 47 (1906)
("Many acts done by an agency of a state may be illegal in their
character when tested by the laws of the state, . . . and yet
they cannot, for that reason alone, be impeached as being
inconsistent with the due process of law enjoined upon the
states."); Elkin v. Fauver, 969 F.2d 48, 52 (3d Cir. 1992), cert.
denied, 506 U.S. 977 (1992) ("An alleged violation of state law,
however, does not state a claim under section 1983.").

confinement after removing him from the halfway house.  This

claim is likewise without merit and will be dismissed because

Plaintiff was not denied a basic human need or deprived of the

minimal civilized measure of life's necessities.  See Wilson v.

Seiter, 501 U.S. 294, 305 (1991).

## IV.  CONCLUSION

Based on the foregoing, the Court grants Plaintiff's

application to proceed in forma pauperis pursuant to 28 U.S.C. §

1915 and dismisses the Complaint pursuant to 28 U.S.C. §§

1915(e)(2)(B)(ii) and 1915A(b)(1) for failure to state a claim

upon which relief may be granted.

_____
JOEL A. PISANO, U.S.D.J.

Dated: _____, 2005